**Electronically Filed
Intermediate Court of Appeals
28762
26-JUL-2012
08:33 AM**

NO. 28762

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DISTRICT COUNCIL 50 OF THE INTERNATIONAL UNION OF
PAINTERS & ALLIED TRADES and
ALOHA GLASS SALES & SERVICE, INC.,
Plaintiffs-Appellants,
v.
KEALI'I S. LOPEZ[1], in her capacity as Director,
Department of Commerce & Consumer Affairs,
Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0310)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Circuit Court Judges Pollack and
Castagnetti in place of Nakamura, C.J.,
Fujise, Leonard, Reifurth, and Ginoza, JJ., all recused)

Plaintiffs-Appellants District Council 50 of the
International Union of Painters and Allied Trades and Aloha Glass
Sales & Service, Inc. (Appellants) appeal from the Judgment and
the "Decision and Order Affirming Board's Final Order, Filed
January 22, 2007" entered September 12, 2007 (Order) in the
Circuit Court of the First Circuit[2] (circuit court).  Judgment
was entered in favor of Defendant-Appellee Keali'i S. Lopez, in

---

[1]      This party is the current director and was substituted pursuant to
Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1).

[2]      The Honorable Eden Elizabeth Hifo presided.

her capacity as Director, Department of Commerce and Consumer Affairs (Appellee) and against Appellants.

On appeal, Appellants contend the circuit court erred in adopting the Administrative Hearings Officer's findings that:

(1) the metal jalousie window work involved in the project known as the Lanakila Elementary School Renovate and Paint Various Buildings DAGS Job No. 52-16-5581 (Project) was "incidental and supplemental" and thus could be performed by a "B" contractor under a C-5 specialty license;

(2) "'[the] work is incidental and supplemental so long as it is directly related to and necessary for the completion of the project' regardless of 'the extent or cost of the work involved[.]'"; and

(3) the "glazing metal jalousie window work was incidental and supplemental" despite evidence the value of that work was approximately 20-25% of the value of the total Project.

## I.    BACKGROUND

On March 3, 2005, the State of Hawaiʻi, Department of Accounting & General Services issued a Notice to Bidders (Notice) regarding the Project which stated

> [t]he work generally consists of replacement of windows, floor covering, tackboards, whiteboards, electrical light fixtures, switches, receptacles and cover plates, doors and door frames, finish hardware, termite damaged wood, gypsum wall board partition, sinks and cabinets, re-keying of locks, interior and exterior painting, cast in place concrete, concrete repairs, concrete masonry and some minor repair work.

A portion of the Project involved the installation of 10,390 vinyl slats and 476 aluminum jalousie windows. The Project specifications required that "[f]abrication and installation of jalousie windows shall be done by skilled and experienced mechanics to the best standard of the trade and in accordance with the approved shop drawings."

On December 20, 2005, the State of Hawaiʻi, Department of Education entered into a contract with Allied Pacific Builders, Inc. (Allied) for the Project. On April 26, 2006,

2

Appellants filed a Petition for Declaratory Ruling (Petition). Appellants disputed the award to Allied contending that, absent a C-22 specialty glazing and tinting license, a general building contractor cannot perform the Project's jalousie window work. The Petition asked the Department of Commerce and Consumer Affairs Contractors License Board (Board) to rule that "a general building contractor with a B-license cannot engage in work requiring a C-22 subcontractor license under the general contractor's C-5 license."[3] Allied is licensed as a "B" general contractor with a C-5 specialty license, does not possess a C-22 specialty license, and did not list a sub-contractor with such a license.

On October 23, 2006, the Administrative Hearings Officer (Hearings Officer) filed his Findings of Fact, Conclusions of Law , and Recommended Order (Recommended Decision). The Hearings Officer found that under Hawaii Administrative Rules (HAR) § 16-77-34 "[a] plain reading of the (Notice) leads the Hearings Officer to conclude that the jalousie window replacement work is related to and necessary for the completion of the renovation work, and as such, is incidental and supplemental to the completion of the Project." The Hearings Officer also found that the "jalousie window replacement work can be undertaken by a C-22 specialty contractor, *and* a C-5 specialty contractor *provided that* the work is incidental and supplemental to the renovation work for which the C-5 contractor is licensed to perform." (emphasis in original). Accordingly, the Hearings Officer recommended that the Board deny Appellant's Petition.

On November 9, 2006, Appellants filed written exceptions to the Hearings Officer's Recommended Decision. The Board issued its Final Order (Final Order) on January 22, 2007 adopting the Hearings Officer's Recommended Decision as the Board's Final Order. On February 16, 2007, Appellants filed

---

[3] The Petition presented three other questions, all three of which were dismissed for lack of jurisdiction and not challenged on appeal.

their Notice of Appeal to the circuit court. On September 12, 2007, the circuit court issued its Order affirming the Board's Final Order and entered Judgment. On September 25, 2007, Appellants filed the instant notice of appeal from the circuit court's Order and Judgment.

## II. STANDARDS OF REVIEW

### Administrative Hearings Officer

Hawaii Revised Statutes (HRS) § 103D-710(e) (2011) governs the "standard by which this court reviews the decisions of a hearings officer[.]" Arakaki v. State, Dept. of Accounting and Gen. Serv., 87 Hawai'i 147, 149, 952 P.2d 1210, 1212 (1998).

> (e) Upon review of the record the circuit court may affirm the decision of the hearings officer issued pursuant to section 103D-709 or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
>      (1) In violation of constitutional or statutory provisions;
>
>      (2) In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;
>
>      (3) Made upon unlawful procedure;
>
>      (4) Affected by other error of law;
>
>      (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
>      (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 103D-710(e).

### Secondary Appeals

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. In an appeal from a circuit court's review of an administrative decision the appellate court will utilize identical standards applied by the circuit court. Questions of fact are reviewed under the "clearly erroneous" standard. In contrast, an agency's legal conclusions are freely reviewable. An agency's interpretation of its rules receives deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose.

Hawai'i Teamsters & Allied Workers, Local 996 v. Dep't of Labor &
Indus. Relations, 110 Hawai'i 259, 265, 132 P.3d 368, 374 (2006)
(internal quotation marks and citations omitted).

### III.  DISCUSSION

Although Appellants present three points on appeal,
those points can be distilled into one question: did the Hearings
Officer err in allowing jalousie window work to be completed by a
contractor with a C-5 speciality license?

It is undisputed that Allied does not possess a C-22
speciality license which would allow a contractor

> [t]o glaze or tint frames, panels, sash, and doors. To
> assemble and  install window wall and curtain wall, shower
> doors, tub enclosures, mirrors, metal windows and screens,
> metal sliding doors, metal jalousies, store front metal and
> trim, plastics, tempered glass doors; including items such
> as frames and hardware and any allied products not stated
> above but affiliated with the glass and glazing industry;

HAR § 16-77-28(c), Exhibit A.  Allied is a "B" general contractor
with a C-5 specialty license that allows a contractor

> [t]o install cabinets, cases, sashes, doors, trims, or
> nonbearing partitions that become a permanent part of
> structure, and to remodel or to make repairs to existing
> buildings or structures, or both; and to do any other work
> which would be incidental and supplemental to the remodeling
> or repairing.  The repairs, carpentry work, or remodeling
> shall include the installation of window shutters, garage
> doors, bifold, and shutter doors; and the installation of
> manufactured sidings and any other work that would not
> involve changes or additions to the building's or
> structure's basic components[.]

HAR § 16-77-28(c), Exhibit A (emphasis added).  In addition to
the language of the C-5 specialty license, HRS § 444-8 (1993)
allows a contractor to take and execute a contract "involving the
use of two or more crafts or trades, if the performance of the
work in the crafts or trades, other than in which the specialty
contractor is licensed, is incidental and supplemental to the
performance of work in the craft for which the specialty
contractor is licensed."  However, HAR § 16-77-33(d) states
"[a]ny licensee who acts, assumes to act, or advertises in any
classification other than for which the licensee is duly licensed

under this chapter shall be construed to be engaged in unlicensed activity."

The question then becomes whether the Hearings Officer erred in determining the jalousie window work to be "incidental and supplemental" to the C-5 specialty license work. HAR § 16-77-34 defines incidental and supplemental "as work in other trades directly related to and necessary for the completion of the project undertaken by a licensee pursuant to the scope of the licensee's license."

The Hearings Officer found that

> [t]he scope of the C-5 classification includes remodeling or making repairs to existing buildings or structures, or both, and doing any other work which would be incidental and supplemental to the remodeling or repairing. . . . A plain reading of the (Notice) leads the Hearings Officer to conclude that the jalousie window replacement work is related to and necessary for the completion of the renovation work and as such, is incidental and supplemental to the completion of the Project.

The Hearings Officer also rejected Appellant's contention that the jalousie work involved an estimated 20 to 25% of the cost of the total project by stating that "HAR § 16-77-34 . . . does not define incidental and supplemental work in terms of either the extent or the cost of the work involved. Rather, work is incidental and supplemental so long as it is directly related to and necessary for the completion of the project." The Board adopted the Hearings Officer's Recommended Decision in its Final Order, thereby denying Appellants request for a declaratory order.

It its Order, the circuit court affirmed the Board's Final Order, finding that

> the finder of fact is the Board, [] it is the Board's duty to decide the scope of licensing under the C5 license and other subspecialties, and the Board has consistently found that where a job requiring renovation work, includes jalousie window work, the jalousie window work falls within the term incidental and supplemental. The court further concludes that under existing case law the Court must defer to the Board's determination of the legitimate scope of work for a licensed specialty, general or otherwise.

The circuit court further found that "there is nothing to prohibit the Board from determining and interpreting HRS Chapter 444 such that jalousie window work representing 20 to 25% of the total project meets the definition of incidental and supplemental under HAR § 16-77-34."

When interpreting the meaning of an administrative rule, "courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning." International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co., 68 Haw. 316, 323, 713 P.2d 943, 950 (1986) (citations omitted). "Moreover, an administrative agency's interpretation of its own rules is entitled to 'deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose.'" Lee v. Elbaum, 77 Hawai'i 446, 457, 887 P.2d 656, 667 (App. 1993). Okada Trucking Co., Ltd. v. Bd. of Water Supply, stands for the proposition that deference should be given to administrative hearings officers. 97 Hawai'i 450 at 458, 40 P.3d 73 at 81 (2002). "[I]nsofar as an administrative hearings officer possesses expertise and experience in his or her particular field, the appellate court 'should not substitute its own judgment for that of the agency' either with respect to questions of fact or mixed questions of fact and law." Id. (quoting Southern Foods Grp., L.P. v. State, Dept. of Educ., 89 Hawai'i 443, 452, 974 P.2d 1033, 1042 (1999)).

In their opening brief, Appellants rely heavily on the Hawai'i Supreme Court's decision in Okada Trucking. In Okada Trucking, the supreme court was asked the question of whether a general engineering contractor with an "A" general license could undertake the work encompassed by a C-37 specialty license. Okada Trucking, 97 Hawai'i 450, 40 P.3d 73. The supreme court held that "a general engineering or building contractor is

prohibited from undertaking *any* work, solely or as part of a larger project, that would require it to act as a specialty contractor in an area in which the general contractor was not licensed to operate." Id. at 462, 40 P.3d at 85 (emphasis in original).

The supreme court, in Okada Trucking, recognized that the "incidental and supplemental" provision was not raised by any party. Okada Trucking, 97 Hawai'i at 461 n.16, 40 P.3d at 84 n.16. Therefore, Okada Trucking is distinguishable from the instant case. Unlike Okada Trucking, in the instant case both the Hearings Officer and the Board made specific findings that the jalousie window work was "incidental and supplemental" to the C-5 work. The Hearings Officer made a determination that the jalousie window work was "incidental and supplemental" to the C-5 work, as it was directly related to and necessary for the completion of the renovation work. The "incidental and supplemental" provision comes from HAR § 16-77-28c, which allows a C-5 contractor "to do any other work which would be incidental and supplemental to the [C-5] remodeling or repairing[,]" and is defined by HAR § 16-77-34. Thus, the Hearings Officer's findings, and the Board's approval of such findings are, as an interpretation of an agency's own rules, entitled to deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose.

The Appellants fail to demonstrate how the Hearing Officer's application of the "incidental and supplemental" provision to the jalousie window work is clearly erroneous or inconsistent with the underlying legislative purpose. Given the standard of review and the deference afforded to administrative decisions of this nature, we conclude the circuit court did not err in affirming the Board's Final Order.

## IV.  CONCLUSION

The Judgment and Order entered September 12, 2007, in the Circuit Court of the First Circuit are hereby affirmed.

DATED:  Honolulu, Hawai'i, July 26, 2012.

On the briefs:

Michael A. Lilly
(Ning, Lilly & Jones)
for Plaintiffs-Appellants.

David A. Webber
Deputy Attorney General
Lei S. Fukumura
Special Deputy Attorney General
Deborah Day Emerson
Supervising Deputy Attorney General
for Defendant-Appellee.

William H. Nagle, III, Honolulu,
for amicus curiae Hawaii Flooring
Association, et al., and
Ironworkers Union Local 625, et al.

Presiding Judge

Acting Associate Judge

Acting Associate Judge